Brian E. Soriano SB#183865
GOLDSTEIN, GELLMAN, MELBOSTAD,
GIBSON & HARRIS, LLP
1388 Sutter Street, Suite 1000
San Francisco, CA 94109-5494
415/673-5600 FAX:415/673-5606

Attorneys for Plaintiff JENNIFER WILSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JENNIFER WILSON, an Individual and as Trustee of the JENNIFER WILSON LIVING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>THE WEALTH CONSERVANCY, INC., and DOES 1-20, inclusive,<br><br>Defendants. | Case No. CIV 07 1076 CW<br><br>PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION [F.R. CIV.P.12(b)(2)]<br><br>Date: April 13, 2007<br>Time: 10:00 AM<br>Courtrm: 2<br>Judge: The Honorable Claudia Wilken |

## INTRODUCTION

Defendant argues that personal jurisdiction is not appropriate over defendant The Wealth Conservancy, Inc., a Colorado corporation. As discussed in more detail below, the facts and allegations in this action support a finding of specific jurisdiction based upon The Wealth Conservancy, Inc.'s contacts with the forum State, some of which are directly related to the plaintiff's claims, through which defendant has purposely availed itself of the benefits and protections of California. *Vons Companies, Inc. v. Seabest Foods, Inc.*, (1996) 14 Cal.4th 434, 445. In addition, it can be shown that out-of-state actions taken by the defendant had a direct impact in California, making an assertion of personal jurisdiction reasonable in this case. *Abbott Power Corp. v. Overhead Electric*

1.

*Co.*, (1976) 60 Cal.App.3d 272, 278.

## STATEMENT OF FACTS

Plaintiff Jennifer Wilson (hereinafter "WILSON,") contracted to have defendant The Wealth Conservancy, Inc., (hereinafter "WC,") to act as her financial advisor in May of 2000. (Wilson Decl., Par. 2.) WILSON is also the Trustee of the Jennifer Wilson Living Trust Dated June 25, 1988, as amended. Prior to the time WILSON contracted with WC, WILSON purchased a single-family residence located at 850 DeHaro Street, San Francisco, for investment purposes. (Wilson Decl., Par.2.) The property was held in plaintiff's revocable trust referred to above. Beginning in April, 2000, WILSON had her primary residence in the State of Washington, but also maintained the residence in San Francisco, California. (Wilson Decl. Par. 2.)

WILSON was informed that her principle contact with WC, Myra Salzer, was an attorney and understood Salzer to be giving legal advice about the ramifications of her various options of owning specific assets including the property she owned in San Francisco, California. (Wilson Decl., Par. 4.) During the period that WC acted as WILSON's financial advisor, Myra Salzer of WC advised WILSON that she should have written agreements governing the living arrangements at the residences she owned including the San Francisco residence where, at that time, WILSON was cohabitating with her cousin, Julia Bergman. (Wilson Decl., Par. 3.) WILSON had no formal agreement with Bergman at that time and was allowing Bergman to contribute a mere $500 per month despite the fact that the amount was far below market rates for similar residences in the area. (Wilson Decl., Par. 5.) At that time it was understood between Ms. Bergman and WILSON that Bergman would reside at the subject property no more than a few years, as she planned to retire and return to her family home in 2006, and because WILSON had purchased the property for investment purposes and wanted to maintain the option of selling the property at any time in the future. (Wilson Decl., Par.5.)

On behalf of WC, Myra Salzer drafted the written agreement and communicated with both WILSON and Bergman telephonically and through written correspondence while WILSON and Bergman were physically located in California. (Wilson Decl. Pars. 2, 3, and 6, Exhs. A, B, C and D thereto.) On or about September 14, 2000, Myra Salzer of WC prepared a "letter of agreement"

2.

detailing the rights and obligations of each of the parties. (Wilson Decl., Par. 6.) The agreement stated, in part, that WILSON agrees to provide to Bergman use of the property and that Bergman agreed to "pay $500 rent, monthly." (Wilson Decl, Par. 6.) This document was never signed. However, a month later, on or about October 10, 2000, WC revised the letter of agreement on Ms. Bergman's request. Among other changes, the revised letter agreement states that Ms Wilson is granting Ms. Bergman the right to live at the property "for as long as you live or choose to live there, or until its unforeseen sale." (Wilson Decl., Par. 6 and Exh. A, thereto.)

In early 2005 when WILSON informed Ms. Bergman that she intended to sell the property and therefore requested Ms. Bergman vacate in the near future, Ms. Bergman hired an aggressive real estate attorney who used WC's October 10, 2000, letter to support a claim that Ms. Bergman held a life tenancy. (Wilson Decl., Par. 7.) The attorney further alleged that WILSON's recent request that Ms. Bergman vacate the property constituted a wrongful eviction, which can expose a landlord to treble damages pursuant to the City and County's Residential Rent Ordinance. Given the significant value of the subject property and the minimal contribution being received from Ms. Bergman memorialized in the October 10, 2000, letter agreement, Ms. Bergman and her attorney calculated future damages of over $900,000. (Wilson Decl., Par. 7.) Meanwhile, Ms. Bergman continued to reside in the property, and WILSON was forced to retain attorneys to protect and defend her from the wrongful eviction claims of Ms. Bergman and assert her right to possession of the property. (Wilson Decl., Par.7.) The parties were unable to resolve their dispute by way of an early mediation, and the case actually had to proceed to formal litigation. Ultimately, after spending $29,655 in attorneys' fees, WILSON was able to resolve the dispute by paying Ms. Bergman $30,000 to vacate the property. WILSON is looking to WC to reimburse her for the amount spent on attorneys' fees, as well as the settlement amount.

## ARGUMENT

A non-resident defendant can be subjected to personal jurisdiction if a plaintiff can demonstrate by a preponderance of evidence that the defendant had minimum contacts with the forum State such that the defendant purposefully availed itself of the benefits and protections of the forum

3.

35230C2.doc:5967-00

State and the controversy relates to or arises out of the defendant's contacts with the forum State. *Vons Companies, Inc. v. Seabest Foods, Inc.*, (1996) 14 Cal.4th 434 at 445. Once these requirements are met, the burden shifts to the defendant to make a compelling case that the asserting personal jurisdiction would be unreasonable. *Id.* At 446; See also, *Schwarzenegger v. Fred Martin Motor Co.*, (9th Cir. 2004) 374 F.3d 797, 801.

In considering a non-resident corporation's contacts with the forum state, California courts applying the minimum contacts test have specifically included consideration of acts done elsewhere that cause effects in the forum state, such as the drafting of a contract to be executed in the forum state and interpreted pursuant to the laws of the forum state. *Abbott Power Corp. v. Overhead Electric Co.*, (1976) 60 Cal.App.3d 272, 277-278. In the case at hand, WC's acts, including those done from Colorado, constitute contacts with California out of which the plaintiff's claim directly arises. Under these circumstances, asserting specific jurisdiction over WC would be appropriate and not unreasonable.

### A. WC's Contacts With California.

By its own admission, WC currently has at least one California resident as a client and has held a seminar[1] in California for which California residents were charged in excess of $1,400 each. WC also engaged in a continuing relationship with WILSON, known by WC to be a California resident, at least in part, and had oral and written communications with both WILSON and her cousin and former roommate, Julia Bergan, while they were in California.

In addition to the contacts described above, a consideration of WC's contacts with California must also include acts performed outside of California that have had effects within the state. *Abbott Power Corp. v. Overhead Electric Co.*, (1976) 60 Cal.App.3d 272, 277-278. In *Abbott*, a California appeals court applying the minimum contacts test from *International Shoe v. Washington*, (1945) 326 U.S. 310, determined that the defendant's mailing of three letters to recipients in California which related to the cause of action at issue constituted, "…the doing of a significant act in California." *Id.* At 279. In *Abbott*, the plaintiff was suing a foreign corporation for interference with a California

---

[1] While little detail has been supplied, the seminar WC held in California necessarily involved additional contacts, e.g. to rent space for the seminar.

4.

contract between the plaintiff and a third party. *Id.*

In the case at hand the acts performed by WC are more easily seen as having an impact in California and relate directly to the causes of action brought by plaintiff. Here, WC not only corresponded with persons located in California; WC actually drafted a contract between a California landlord and a California tenant concerning real property located in California which would obviously be interpreted under California law.

### B. WC Purposely Availed Itself of the Privilege of Conducting Activities in California.

WC had a continuing relationship with WILSON which included financial management of WILSON's California real estate. WC specifically gave advice concerning the California real estate including, but not limited to: advising WILSON to execute a written agreement concerning the living arrangements, drafting the agreement concerning the same, corresponding with WILSON and her roommate/ tenant, Julia Bergman and, giving advice concerning the legal distinctions between "repairs and maintenance" versus "permanent changes." (Wilson Decl.; Exhs. A, B, C and D, thereto.)

The above-described conduct is particularly significant as it constitutes the unlicensed practice of California law. As defendant's Memorandum points out, California applies a test similar to that used to determine personal jurisdiction of a non-resident when a defendant is accused of unauthorized practice of law in California. What defendant fails to point out is that the State Supreme Court found that an attorney engages in the unlicensed practice of California law, even though the attorney is not physically located in California, by advising a California client about endeavors inside California which will be governed by California law. *Birbrower, Montalbano, Condon & Frank v. Superior Court*, (1998) 17 Cal.4th 119. The Court also noted that active litigation is not required to constitute the unauthorized practice of law. *Id.*

In the present case, WC advised an owner of California real property about tenancy relationships and drafted a lease agreement that would undoubtedly by interpreted under California law. As a result, a generous gesture by WILSON was transformed into an enforceable right to

5.

35230C2.doc:5967-00

possession for Bergman's lifetime. An assertion of jurisdiction over WC is consistent with the findings in *Birbrower* where the Court found similar conduct sufficient to establish the unauthorized practice of law in California and personal jurisdiction despite the fact that the attorney was never physically in California and did not engage in litigation. *Id.*

### C. WILSON's Claims Arise Directly Out of WC's Contacts with California.

"A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate." *Vons Companies, Inc. v. Seabest Foods, Inc.*, (1996) 14 Cal.4th 434 at 452. However, "for the purpose of establishing jurisdiction, the intensity of the forum contacts and the connection of the claim to those contacts are inversely related." *Id.* At 452. In other words, the closer the connection between the contacts and the claim being asserted, the less stringent the requirement of continuing contacts with the forum state.

In the case at hand, WILSON's claim arises directly from WC's contacts with the forum state, specifically, advising WISLON about her California real property and drafting a contract to be executed between two California residents concerning real property in California which would undoubtedly be interpreted under California law. Because WILSON's claim arises directly from WC's contacts with the forum state, personal jurisdiction can properly be asserted in this action.

### D. Asserting Personal Jurisdiction Over WC Is Reasonable.

Once it has been decided that a defendant purposefully established minimum contacts with the forum State, the burden shifts to the defendant to make a compelling case that the exercise of personal jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, (1985) 471 U.S. 462. Courts may consider the burden on the defendant, the forum state's interest in adjudicating the claim, the plaintiff's interest in the convenient and effective relief within the forum, judicial economy, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477.

As the U.S. Supreme Court has explained, "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the

6.

serious burdens placed on the …defendant." *Asahi Metal Industry Co. v. Superior Court*, (1987) 480 U.S. 102, at 114. California has an obvious and direct interest in adjudicating claims involving the unauthorized practice of California law and in protecting its residents and owners of real property located in California. Plaintiff prefers the case to be adjudicated in California as it would be more convenient and efficient. All of the witnesses other than the defendant currently reside in California. Any experts would certainly be located in California as issues requiring expert opinion would include opinions on the value of California real estate and opinions concerning the application of San Francisco's local rent ordinance to the contract suggested and drafted by WC. Under these circumstances, WC cannot meet its burden of showing that the assertion of personal jurisdiction in this case would be unreasonable.

## CONCLUSION

For all of the foregoing reasons, plaintiff respectfully respects this Court deny defendant's Motion to Dismiss for lack of jurisdiction.

Dated: March 23, 2007

                                            GOLDSTEIN, GELLMAN, MELBOSTAD,
                                            GIBSON & HARRIS, LLP

                                            _____
                                            Brian E. Soriano
                                            Attorneys for Plaintiff JENNIFER WILSON,
                                            An Individual and as Trustee of the
                                            JENNIFER WILSON LIVING TRUST

35230C2.doc:5967-00